2013 Feb-21  PM 12:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **HARVEY DALE LANDRY, SR,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **6:12-cv-02177-AKK** |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Harvey Dale Landry, Sr. ("Landry") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits to Landry.

## I. Procedural History

Landry protectively filed applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") benefits on May 15, 2008, alleging a disability onset date of February 3, 2003 due to back problems. (R. 130-336, 141). Landry was insured, for purposes of DIB benefits, until June 30, 2008 and thus was required to demonstrate disability on or before that date. (R. 137). After the SSA denied Landry's applications, he requested a hearing before an ALJ. (R. 60, 66). The ALJ subsequently denied Landry's claims, (R. 48-59), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-8). Landry then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1; *see also* doc. 10.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

> (1)   whether the claimant is currently unemployed;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals one listed by the Secretary;
>
> (4)   whether the claimant is unable to perform his or her past work; and
>
> (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV.  The ALJ's Decision

The ALJ properly applied the five step analysis and first determined that Landry has not engaged in substantial gainful activity since February 3, 2003, and therefore met Step One. (R. 52). The ALJ also acknowledged that Landry's "very minimal ostephytes at L3-4, L4-5" was a severe impairment that met Step Two. *Id*. The ALJ proceeded to the next step and found that Landry failed to meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and

thus did not satisfy Step Three. *Id*. Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Landry

> has the residual functional capacity to lift 10 pounds frequently and 20 pounds occasionally; to stand, walk, and/or sit for six hours each in an eight-hour workday with normal breaks; to push/pull without limitation; to frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and to otherwise perform unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b)

(R. 52). With respect to the pain standard, the ALJ found that the medical record and Landry's "daily activities belie the severity of pain alleged." *Id*. at 53. As a result of his RFC assessment, the ALJ found that Landry is unable to perform any past relevant work. *Id*. at 54. Finally, the ALJ proceeded to step Five and found that "there are jobs that exist in significant numbers in the national economy that [Landry] can perform." *Id*. at 55. Accordingly, the ALJ determined that Landry is not disabled. *Id.*; *see also McDaniel*, 800 F.2d at 1030.

## V. Analysis

Landry contends that the ALJ erred by failing to properly weigh the opinion of Landry's treating physician. Doc. 10. Under the Social Security regulations, treating physicians are generally given more weight than other medical sources. 20 C.F.R. § 404.1527(c)(2). However, a treating source opinion is only due

controlling weight when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" *Id*. Otherwise, the ALJ will assign weight to a treating source opinion based on the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion through relevant evidence, consistency with the record as a whole, specialization of the source, and other relevant factors. 20 C.F.R. § 404.1527(c)(2)(i-ii) and (3)-(6). In determining whether the ALJ's assignment of weight to Landry's treating physician is supported by substantial evidence, the court examines the relevant evidence below.

**A.     Dr. E.A. Mangieri's Opinions**

On August 19, 2008, Dr. Eugene A. Mangieri performed a clinical assessment of fatigue/weakness, mental medical assessment, physical functional assessment, and clinical assessment of pain on Landry. (R. 369-376). In the fatigue/weakness assessment, Dr. Mangieri found that the fatigue and weakness Landry experiences due to his impairment is "virtually incapacitating" and that even minimal physical activity like standing would increase this fatigue and weakness so much that Landry would require bed rest or medication. *Id*. at 370. On the mental assessment form, Dr. Mangieri indicated that Landry's impairment

would moderately affect his ability to follow work rules, maintain attention or concentration, carry out or remember or understand job instructions, maintain personal appearance, and demonstrate reliability. *Id*. at 371-72. On the physical functional assessment form, Dr. Mangieri opined that Landry would be able to stand for only 15-20 minutes at a time, walk for only 20 feet, and would need to lie down for 1-2 hours at least 2-3 times per day . *Id*. at 373. Additionally, Dr. Mangieri indicated that Landry could only occasionally push, pull, use his arms or legs, or kneel and could never climb, balance, stoop, crouch, crawl or reach. *Id*. Even more limiting, Dr. Mangieri opined that Landry could never work in nearly all environments, including extreme cold, extreme heat, vibration, near fumes, noxious odors, dusts, mists, gases or poor ventilation, near moving mechanical parts, in high, exposed places, or "other."[2] *Id*. at 374. Finally, in his clinical assessment of pain, Dr. Mangieri indicated that Landry's pain is "virtually incapacitating," that an increase in activity would force the need to lie down or take medication, and that the pain would cause Landry to miss more than 4 days of work per month. *Id*. at 375.

The ALJ properly discredited the opinions contained in these reports based

---

[2] Although the form indicates that the doctor should specify what "other" environments the claimant cannot work in, Dr. Mangieri failed to do so. (R. 374).

on Dr. Mangieri's failure to support them.  *See* 20 C.F.R. § 404.1527.  According to the fatigue/weakness assessment form, Dr. Mangieri's opinion is an "estimate" based on "the nature of the impairment, the degree to which fatigue/weakness is typically of concern in that impairment, and the extent to which the patient exp[r]esses the presence of fatigue/weakness and requests medical for its relief." (R. 370).  However, Dr. Mangieri failed to explain these factors in relation to Landry's specific condition.  Likewise, the mental assessment report again fails to indicate how Dr. Mangieri reached his conclusions.  *Id*. at 371-72.  The physical functional assessment form specifically asks the completing physician to "relate particular medical findings to any assessed reduction in capacity" because "the usefulness of this assessment depends on the extent to which you do this."  *Id*. at 373. Unfortunately, Dr. Mangieri either failed to indicate any clinical findings or wrote simply "due to pain" on the assessment.  *Id*. at 373-74.  Lastly, the pain assessment's indication of disabling pain is unsupported based on Dr. Mangieri's conclusion, within the same report, that Landry's prescribed medication would effectively treat the pain without creating any serious problems or side effects.  *Id*. at 375.

  Likewise, the ALJ properly discredited Dr. Mangieri's reports because of an inconsistency with Dr. Mangieri's own treatment records.  *See* 20 C.F.R. §

404.1527. Landry visited Dr. Mangieri nearly every month between April 2007 and December 2011 for pain management and consistently indicated that his pain ranged between a two or three on a ten point pain scale with his medication. (R. 277-341, 378-397, 416-436). Moreover, Dr. Mangieri never changed Landry's pain medication or indicated that another form of treatment was necessary. *See id.* This suggests that Landry's pain was well treated by his medications and undermines Dr. Mangieri's statements that Landry is unable to work due to pain. Additionally, none of these reports indicate any symptoms beyond lower back pain. *See id.* Accordingly, the court agrees with the ALJ that Dr. Mangieri's conclusions regarding other symptoms such as disabling fatigue, inability to understand instructions, and limited use of extremities are not supported by Dr. Mangieri's other medical reports.

**B.     The Remaining Medical Evidence**

Although the ALJ properly discredited Dr. Mangieri's reports based on a lack of internal supportability, the reports are also inconsistent with the remaining medical evidence. The medical evidence begins in 1995 when Landry began seeing Dr. Michael Cozza for back pain stemming from a work-related injury. (R. 198). In 2001 Landry again sprained his back at work, but did not stop working until 2003 when he decided it was interfering with his physical therapy. *Id.* at 238.

However, by May 2003 Dr. Cozza noted that continued physical therapy and use of the TENS Unit helped Landry's occasional pain and that he could use these techniques *while* working.  *Id*. at 235.  Dr. Cozza's finding that Landry's pain was merely occasional and could be effectively treated through rehabilitation exercises directly contradicts Dr. Mangieri's opinion that Landry's pain is completely disabling.  Dr. Cozza's follow up low back exams showed "unremarkable" results, despite Landry's continued complaints of pain.  *Id*. at 234.  Eventually, Dr. Cozza recommended that Landry undergo a rhizotomy to prevent future flare ups of pain and informed Landry that he would fully recover four weeks after the procedure. *Id*. at 233.  However, Landry refused the procedure because he was preparing to move from Pennsylvania to Alabama.  *Id*.  In short, Dr. Cozza's reports further contradict Dr. Mangieri's findings in that they show Landry's condition could be effectively treated with a short recovery time and that Landry could in fact continue to work while undergoing therapy.

     Following his appointments with Dr. Cozza, Landry presented at HealthSouth Diagnostic Center of Tuscaloosa in November 2004 for a post mylogram lumbar CT exam.  *Id*. at 270.  The exam indicated mild disc bulging at L3-4, moderate disc bulging at L4-5, and mild bulging at L5-S1 with disc bulging being slightly more prominent to the right of the midline.  *Id*. at 270-71.  However,

Landry failed to provide any evidence of medical treatment for pain between this exam and his first appointment with Dr. Mangieri in 2007. Landry's purported failure to seek medical attention for his back pain for nearly 3 years belies his contention that his back pain is disabling.

Additionally, when Dr. James R. Saxon at the Radiology Clinic reviewed the CT exam results and performed an additional examination in July 2008, he noted "very minimal degenerative change." *Id*. at 358. Ultimately, Dr. Saxon assessed Landry with "chronic mechanical lower back pain with degenerative disc disease at three levels" but with no evidence suggesting complete disability. *Id*. at 356-57. Lastly, Wendy L. Bouyer performed a physical RFC assessment on Landry in July 2008. *Id*. at 362-68. Consistent with the medical evidence, exclusive of Dr. Mangieri's reports, Bouyer opined that Landry could frequently lift or carry 10 pounds, stand, walk or sit for 6 of 8 hours per work day with normal breaks, and had no manipulative or postural limitations. *See id.*

In other words, while Landry suffers from a disorder that could cause some pain, there is no evidence in the record supporting Dr. Mangieri's conclusion regarding the extreme severity of that pain or an inability to treat this pain through medication and/or physical therapy. To the contrary, the medical record indicates that Landry's occasional lower back pain can be kept at a pain level of two with

medication and could likely be eliminated through a medical procedure or continued physical therapy. Accordingly, the court finds that the ALJ properly applied the standard for assigning weight to Dr. Mangieri's opinions under 20 C.F.R. § 404.1527 and that the ALJ's decision is supported by substantial evidence.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Landry is not disabled is supported by substantial evidence and proper legal standards were used in making this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 21st day of February, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE